**BRIGHT v. MORROW et al.    (No. 2322.)**

(Court of Civil Appeals of Texas.    Texarkana.
Nov. 19, 1920.    Rehearing Denied
Dec. 9, 1920.)

1. **Partnership ☞245(3)—Survivor of tenant partners can repay landlord's advances from crop proceeds.**

Where one of two partners, who were tenants under a cropping lease, died before the crop was sold, the surviving partner not only could but should repay to the landlord from the copartnership proceeds the advances by the landlord to the firm.

2. **Partnership ☞245(6)—Conversion of partnership funds held not shown by survivor's payment of individual debt.**

A landlord is not liable for conversion of the funds of a deceased tenant, where it appeared that the surviving partner of deceased, after harvesting the crop, paid an individual debt to the landlord from the proceeds, if it also appeared that after such payment the surviving partner retained sufficient portion of the proceeds to satisfy the deceased partner's claim in full.

Appeal from District Court, Fannin County; Ben H. Denton, Judge.

Suit by Emma Morrow and others against R. L. Bright and another.    Judgment for plaintiffs, and the named defendant appeals. Judgment reversed as to appellant.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appellees Emma Morrow, J. B. Tanner, C. B. Tanner, and Jennie A. Goodwin, were the children and only heirs of J. N. Tanner, who died intestate August 24, 1918. Their suit against Ollie Bright and appellant R. L. Bright was to recover $1,500, the proceeds, they alleged, of a sale by the Brights of an interest said J. N. Tanner owned in a crop of cotton grown by him and Ollie Bright on land they rented of appellant for the year 1918. The theory on which said appellees sought the recovery was that the Brights had unlawfully converted said proceeds to their own use. In his pleadings and in his testimony as a witness R. L. Bright denied that he rented the land to Ollie Bright and J. N. Tanner jointly, but alleged and testified that he rented it to Ollie Bright alone. He was supported in his contention by both the pleadings and testimony of Ollie Bright, but the jury found to the contrary on special issues submitted to them, that is, they found that R. L. Bright rented the land to both Ollie Bright and J. N. Tanner, and further found that the latter were "partners in the crop." On these findings and others he made himself the trial court rendered judgment in favor of appellees against R. L. Bright and Ollie Bright for the sum of $881.48.

The appeal from the judgment is by R. L. Bright alone.

J. W. Gross and J. A. O'Keefe, both of Bonham, and B. B. Sturgeon, of Paris, for appellant.

Thos. P. Steger and J. M. Baldwin, both of Bonham, for appellees.

WILLSON, C. J. (after stating the facts as above). [1] It appeared from the testimony that appellant advanced $1,102.35 to pay for chopping, picking, and hauling the cotton. As the survivor of the copartnership, Ollie Bright not only had a right, but it was his duty, to repay said sum to appellant out of the part of the copartnership owned of the proceeds of the sale of the cotton crop. 20 R. C. L. 995, 1003, 1010; 30 Cyc. 620, 622, 634; Gresham v. Harcourt, 93 Tex. 149, 53 S. W. 1019.

[2] After he so repaid said $1,102.35, there was left in Ollie Bright's hands $2,217.47 of said proceeds, one half of which, or $1,108.73, less $227.25 (the latter sum being the amount of indebtedness of J. N. Tanner to Ollie Bright), belonged to the estate of said J. N. Tanner, and the other half of which, plus said $227.25, belonged to Ollie Bright. The theory on which the trial court held appellant to be guilty of a wrongful conversion of the $881.48 belonging to said estate was that Ollie Bright used same to pay indebtedness he individually owed to appellant, and that the latter received and retained same knowing it belonged to said estate. As we understand the record, the theory was a false one;

for, while it was true it appeared that Ollie Bright paid indebtedness amounting to $1,081 he individually owed to appellant, there was no testimony whatever that in paying it he used the $881.48 in his hands belonging to said estate. On the contrary, it appeared without dispute in the testimony that, after he paid appellant said $1,081, Ollie Bright still had $1,136 of said $2,217.47 in his hands; and there was no testimony tending in the least to show that the $881.48 belonging to said estate was not a part of said $1,136.

So far as the judgment was in favor of said appellees against Ollie Bright, it will not be disturbed; but it will be reversed so far as it was in their favor against appellant, and judgment will be here rendered that they take nothing by their suit against him.