**BAHR et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 9589.

Circuit Court of Appeals, Fifth Circuit.

April 22, 1941.

HUTCHESON, Circuit Judge, dissenting.

———◆———

William Fulton Tarver, of Houston, Tex., and Milton K. Eckert and John C. White, both of Washington, D. C., for petitioners.

John J. Pringle, Jr., and Sewall Key, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Ralph F. Staubly, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

Two brothers, Frank V. and Eugene L. Bender, were universal partners, having no individual property or debts. Frank died March 18, 1934, leaving a will of which Eugene was executor, and which required all his debts to be paid and then gave Eugene all his property of every sort. Eugene qualified as executor but before completing the administration died December 1, 1934, leaving a will of which the petitioners are executors. A return for federal estate taxes on Frank's estate had been made by Eugene as executor, but the taxes had not been paid when Eugene died. There was no controversy over them, and they have

been paid by petitioners. The estate taxes of Eugene's estate are in dispute, the Commissioner having assessed a deficiency, which the Board of Tax Appeals, In re Bender's Estate, 41 B.T.A. 80, confirmed. The errors assigned in the petition to the Board and elaborated here are: (1) The Commissioner in his computation of the deduction for property previously taxed erred in using the net estate of the prior decedent (Frank) as a basis instead of the gross estate. (2) He erred in reducing the deduction for debts evidenced by notes on partnership property from three-fourths of $406,000 to one-half of $406,000. (3) He erred in disallowing deductions of $61,464 and $44,902 for federal estate tax and State inheritance tax respectively on the estate of Frank, which became debts of Eugene's estate.

The facts are all stipulated. Frank left a widow, who under the Texas community property law had a half interest in her husband's half of the partnership. She was settled with in property and money, and by her assumption of one-fourth of the debts. She does not figure in this case. Her husband's interest in the partnership and his one-fourth of the debts alone do. The point of the controversy is whether Eugene's gross estate is to include Frank's gross estate and to take deduction for his fourth of the debts, or whether Frank's estate is to be considered reduced by the amount of his debts in figuring Eugene's estate. The question occurs in two forms: first, in figuring Eugene's gross estate and the deductions for claims against that estate; and, second, in figuring the special deduction for property previously taxed within five years, under Revenue Act of 1926, Sect. 303 (a) (2), as amended by Revenue Act of 1932, Sect. 806 (a), 26 U.S.C.A. Int.Rev.Acts, page 233.

■ Some effort is made in petitioner's brief to foreclose the matter by claiming that the stipulation of facts establishes that the gross value of Eugene's estate is $2,-414,920. That figure and those of which it is the total are preceded in the stipulation by this: "At the date of Eugene L. Bender's death the value of the property formerly belonging to the partnership enterprise * * * without reduction for debts owing * * * was as follows." We do not think the stipulation was intended to cut off enquiry as to whether Frank's debts ought to be deducted from his share of the property in figuring Eugene's estate, for

that was the very thing to be tried under the stipulation.

■ Under the law generally prevalent in the United States Eugene, as surviving partner, would have been under duty to possess and administer the partnership land and personalty for the settlement of the partnership. 47 C.J., Partnership, §§ 611, 613, 616, 633, 642. The land, no matter how the legal title stood, would in equity be treated as personalty. The dead partner's estate would be entitled only to a share in the residue after the business was wound up. Fourth Nat. Bank v. New Orleans & Carrollton Railroad, 11 Wall. 624, 20 L.Ed. 82; Shanks v. Klein, 104 U.S. 18, 26 L.Ed. 635; Bank of Southwest Georgia v. McGarrah, 120 Ga. 944, 48 S.E. 393. 47 C.J., Partnership, §§ 626, 627, 629. When the surviving partner is also the personal representative of the deceased partner, his rights and his duties as survivor are unaffected. 47 C.J., Partnership, §§ 643, 646, 221. These principles seem to be well established also in Texas. Moore v. Steele, 67 Tex. 435, 3 S.W. 448; Oliphant v. Markham, 79 Tex. 543, 15 S.W. 569, 23 Am.St.Rep. 363; Altgelt v. Alamo Natl. Bank, 98 Tex. 252, 83 S.W. 6; Gresham v. Harcourt, 93 Tex. 149, 53 S.W. 1019; Martin v. Dial, Tex.Com.App., 57 S.W.2d 75, 89 A.L.R. 571; Bright v. Morrow, Tex. Civ.App., 225 S.W. 580; Colorado River Syndicate v. Alexander, Tex.Civ.App., 288 S.W. 586; Ramon v. Ramon, Tex.Civ.App., 10 S.W.2d 584; Sherk v. First Natl. Bank, Tex.Com.App., 206 S.W. 507; Diamond v. Gust, Tex.Civ.App., 206 S.W. 366. Neither Frank's estate, nor Eugene as Frank's legatee, could have anything except an interest in what was left of the partnership property after the debts were paid.

If the partnership be considered wound up, it being clearly solvent, by Eugene's apportioning the property and debts among Mrs. Frank, Frank's estate, and himself, so that one-fourth of the property became Frank's and one-fourth of the debts (as between themselves) Frank's individual debts, a similar result follows. Eugene as executor was bound to sell so much of Frank's property as was needed, and pay Frank's debts. Had he done so, he as sole legatee would get only what was left. The value of Frank's property less the amount of Frank's debts was his legacy, and the will so said. He did not become entitled to anything else by dying during the year of administration. In most juris-

dictions the executors of the executor would then become Frank's representative, or an administrator de bonis non cum testamento annexo would be appointed to complete the administration of Frank's estate, and Eugene's estate would get only what was left after paying Frank's debts.

It is argued that it is otherwise in Texas because of Rev.Civ.Stats. Art. 3314: "When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will shall vest immediately in the devisees or legatees * * * subject, however, to the payment of the debts of the testator * * *." There is a similar provision as to heirs where there is no will; and in either case the grant of letters testamentary or of administration entitles executor or administrator to possess and dispose of the estate. Art. 3343 makes the debts of the decedent a lien on the property if taken without administration. As to this we observe that federal taxing statutes are to be so applied as to have the same results in like situations throughout the United States. The peculiarities of local laws do not control unless the statute refers to them as a standard. Thomas v. Perkins, 301 U.S. 655, 57 S.Ct. 911, 81 L.Ed. 1324; Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199. Whether the local law provides one sort of administration, or another sort, or no administration, ought not to affect the incidence or the amount of this tax on the transfer of wealth from the dead to the living. When an administration is cut short, as here, just as equity considers that done which ought to have been done and grants relief accordingly, so the estate tax administration ought to consider that done which should have been done and assess the tax accordingly, and alike in all parts of the United States. If either the partnership or the estate of Frank had been regularly wound up, Eugene would not have received from Frank's estate a full onefourth of the partnership assets, but that fourth reduced by Frank's fourth of the debts.

As to the partnership creditors, Eugene owed the debts equally with Frank; but as between themselves after dissolution and settlement with Mrs. Frank, he did not. Each partner was amply solvent. If Eugene should pay Frank's part he would have recourse on Frank's estate. For present purposes Frank's fourth of the debts were an incumbrance on Frank's property and not "claims against the estate" of Eugene. The two things are clearly distinguished in the tax statute and regulations; Sect. 303 (a) (1), as amended by Revenue Act 1932, § 805, 26 U.S.C.A. Int.Rev.Acts, page 232; Reg. 80, Art. 38. That section, providing for deductions, after naming funeral and administration expenses, mentions: (C) Claims against the estate, and (D) Unpaid mortgages upon or any indebtedness in respect to property, where the value of decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate. Frank's part of the debts, a lien on his part of the property, is "such mortgage or indebtedness." Subsection D permits, so far as it is concerned, either that the net value of the property be put in the gross estate in which case the indebtedness may not be deducted, or else the full value may be included in the gross with a contra deduction. There is, as the Board remarks, no difference thus far which is done.

But when we come to Sec. 303 (a) (2), as amended by Sect. 806 (a) of the Revenue Act of 1932, which deals with the deduction of property which has caused estate taxes within five years preceding, it does make a difference, both in the basis of this deduction, and in the subtraction from it of the result of the formula with which subparagraph (a) (2) ends. The purpose of these provisions is to avoid a double estate or gift tax on the same property within five years. The language used is adapted to one or more particular pieces of property specifically given or inherited. It is not adapted to an unadministered estate as a whole. This is a strong reason for caution in applying it to an unadministered estate which is indebted. If applied, it should be on condition that the reality of the situation be regarded, that Eugene did not become devisee of all Frank's property and of his debts, but was by the will and by the law told to pay the debts first. The estate tax of Frank was returned and estimated as though that had been done. Eugene was enriched only by the net amount of Frank's estate. He ought not to have his estate tax diminished because he did not pay Frank's debts, thus acquiring a larger gross estate and larger deductions as for claims against his own estate. Petitioners insist on the literal words in the subparagraph limiting this deduction: "Only in the amount finally determined as the value of such property in determining * * * the gross estate of

such prior decedent." The fallacy and injustice lie in the fact that all of Frank's property is sought to be included in Eugene's gross estate, whereas only that left after paying Frank's debts would be there if Eugene had done his job as executor; and Frank's debts are sought to be made deductions, when they ought to have been discharged before any of Frank's property was taken into Eugene's estate. Neither the peculiarity of Texas law nor the death of Eugene before completing his duties about Frank's estate ought to affect these taxes.

▮ The federal estate tax and State inheritance tax assessed against the estate of Frank, though paid by petitioners after the death of Eugene, are not claims against the estate of Eugene. They go to reduce the value of property received by Eugene's estate from Frank's, along with his fourth of the partnership debts and administration charges, as the Commissioner ruled.

The decision of the Board of Tax Appeals is affirmed.

HUTCHESON, Circuit Judge (dissenting).

This appeal involves a tax deficiency in the amount of $84,951.55, assessed against the estate of Eugene Bender, sole legatee of his brother, Frank Bender, who had died eight months before. In arriving at the deficiency determination, taxpayer and commissioner found themselves in almost complete agreement upon the values of the properties forming the gross estates of the two brothers. They found themselves in complete disagreement upon whether in determining the reduction from the deduction, it allowed, Section 303 (a) (2)[1] required the use in the equation of the gross or the net estate values.

The Board in confessed inability to understand the significance and effect of taxpayer's insistence that the section required an equation using the gross estates, brushed the contention aside as really detrimental to taxpayer.[2] Proceeding then on the wholly erroneous assumption that the commissioner's use of net estate figures favored the taxpayer, it sustained the deficiency determination which had been arrived at by the use of the net, rather than the gross estate.

Petitioners are here insisting that the commissioner in arriving at his determination as to the deduction allowable under Section 303 (a) (2), as amended, and the Board in affirming it, have not as they

---

[1] "An amount equal to the value of any property (A) forming a part of the gross estate situated in the United States of any person who died within five years prior to the death of the decedent, * * * where such property can be identified as having been received by the decedent * * * from such prior decedent by gift, bequest, devise, or inheritance * * *. This deduction shall be allowed only where * * * an estate tax imposed under this or any prior Act of Congress, was finally determined and paid by or on behalf of * * * the estate of such prior decedent, * * * and only in the amount finally determined as the value of such property in determining the value of * * * the gross estate of such prior decedent, and only to the extent that the value of such property is included in the decedent's gross estate * * *. Where a deduction was allowed of any mortgage or other lien in determining the gift tax, or the estate tax of the prior decedent, which was paid in whole or in part prior to the decedent's death, then the deduction allowable under this paragraph shall be reduced by the amount so paid. The deduction allowable under this paragraph shall be reduced by an amount which bears the same ratio to the amounts allowed as deductions under paragraphs (1), (3), and (4) of this subdivision as the amount otherwise deductible under this paragraph bears to the value of the decedent's gross estate. Where the property referred to in this paragraph consists of two or more items the aggregate value of such items shall be used for the purpose of computing the deduction. * * *" 26 U.S.C.A. Int.Rev.Acts, page 233.

[2] After saying that the first point of petitioner was that a much larger gross figure than the Commissioner used, should have been used in computing deductions under Sec. 303(a) (2), the Board said that "if the larger amount were used both places, the contention of the petitioners under section 303(a) (2) would tend to increase the deficiency rather than reduce it. [The Board is] puzzled to know why this situation was not recognized and disclosed in petitioners' brief. * * * Since a favorable decision on the first point can not of itself result in any benefit to the petitioners, and since the Commissioner is contending that his own method, which results in a smaller deficiency, is correct, it is really not an issue which requires or justifies a decision by the Board." [41 B.T.A. 82.]

should have done applied the ratio provision of the 1932 Amendment.[3] They have read and applied the section as though it still contained the provision found in prior acts, "and not deducted under paragraph 1 or 3 of subsection (a) of this section." I agree with petitioners.

From the very beginning the estate tax acts have provided that, for the purpose of the tax, the value of the net estate shall be determined by first ascertaining the gross estate and then making certain deductions from it. Whatever form additions to or amendments of the estate taxing acts have taken, this method of arriving at the net estate has always been pursued.

The first provision for deduction of the value of properties forming part of a prior estate, appeared in Section 403 (a) (2), Revenue Act of 1918.[4] In 1921 this section was amended,[5] so as to make more detailed and accurate provision for taking this prior estate deduction. In this act there first appeared the words, "and not deducted under paragraphs (1) or (3) of subdivision (a) of this section." This provision was carried substantially unchanged into the 1924 and 1926 Acts, 26 U.S.C.A. Int.Rev. Acts, pages 69, 233. The ratio provision in question here, italicized in note 3, first appeared in the 1932 Amendment of the 1926 Act. As then amended it has been carried forward in subsequent tax laws.

The report of the House Ways and Means Committee on the Revenue Act of 1932,[6] purports to give a reason for amending out of the section, the provision in the prior acts against deductions already taken, and writing into it in lieu thereof, the provision for reducing the deduction by the use of an arbitrary ratio. Whether this is a good reason for the change or whether the purpose of it has been accomplished, is beside the mark here. The report is cited only to emphasize what the Board and the Commissioner seem to have completely overlooked, that this section of the Act of 1926, as amended in 1932 is a very dif-

[3] *"The deduction allowable under this paragraph shall be reduced by an amount which bears the same ratio to the amounts allowed as deductions under paragraphs (1), (3), and (4) of this subdivision as the amount otherwise deductible under this paragraph bears to the value of the decedent's gross estate."* (Italics supplied.)

[4] "(2) An amount equal to the value at the time of the decedent's death of any property, real, personal, or mixed, which can be identified as having been received by the decedent as a share in the estate of any person who died within five years prior to the death of the decedent, or which can be identified as having been acquired by the decedent in exchange for property so received, if an estate tax under the Revenue Act of 1917 or under this Act was collected from such estate, and if such property is included in the decedent's gross estate." 40 Stat. 1098. Cf. Rodenbough v. United States, 3 Cir., 25 F.2d 13, 15, 57 A.L.R. 1091.

[5] "An amount equal to the value of any property forming a part of the gross estate situated in the United States of any person who died within five years prior to the death of the decedent where such property can be identified as having been received by the decedent from such prior decedent by gift, bequest, devise, or inheritance, or which can be identified as having been acquired in exchange for property so received: Provided, That this deduction shall be allowed only

where an estate tax under this or any prior Act of Congress was paid by or on behalf of the estate of such prior decedent, and only in the amount of the value placed by the Commissioner on such property in determining the value of the gross estate of such prior decedent, and only to the extent that the value of such property is included in the decedent's gross estate and not deducted under paragraph (1) or (3) of subdivision (a) of this section." 42 Stat. 279.

[6] "(2) Provision for reducing the deduction for prior taxed property on account of other deductions, such as claims against the estate, administration expenses, charitable bequests and the specific exemption. The words and not deducted under paragraphs (1), (3), of this subdivision were inserted in section 403 (a) (3) of the Revenue Act of 1921 to prevent a double deduction, but that purpose has not been entirely accomplished. Under existing law, if the decedent received from the first decedent bonds valued at $100,000 and specifically bequeathed those bonds to charity, only one deduction would be allowed. However, if instead of specifically bequeathing the bonds, he gave charity a general legacy of $100,000, which could be satisfied out of property other than the bonds, two deductions would be allowed. Under the amendment, the allowable deduction in the two examples is the same: namely, the full amount of the charitable bequest, and a pro rata part of the prior taxed property."

ferent thing from the section as it existed before the amendment. As so written it does not provide as the former acts did, for reducing the deduction for prior taxed property, allowed under subsection (2) of the section, by excluding from the value of the gross estate, inherited by the second decedent, deductions allowed under subsections (1) and (3) of the section. It provides for reducing the paragraph (2) deduction by an amount bearing the same ratio to the deductions allowed under the other three paragraphs of the section, which the paragraph 2 deduction bears "to the value of the decedent's gross estate."

Petitioners sought below and seek here the application of this formula. In principle they ask no more than this, in principle no less should be accorded them. Where the words of a taxing act have a sensible meaning they are controlling. They must be followed rather than a supposed intent not expressed in them. "Courts and administrative agencies are bound to enforce the plain words of the statute although there may be reason to think, in view of the general legislative purpose that some other provision would have met with favor if the Legislature had called it to mind." Commissioner of Internal Revenue v. Windrow, 5 Cir., 89 F.2d 69, 71, 110 A.L.R. 1251. The Board cannot, if it would, amend subdivision (2) of the statute, to read into it the provision, "and not deducted under paragraphs (1) or (3) or subdivision (a) of this section", which Congress has by amending it, taken out of it. It will not do then for the Board to say to the petitioners, we think the method employed by us is more nearly right and just than the one you invoke. For this is not to apply but to rewrite the section. It must be able to point out that its determination is in accordance with the section as amended and not as it formerly was. It has failed to do this. The majority opinion, though satisfied with the conclusions of the Board, recognizes that the reasons it advances for its conclusions do not form a sound basis for them, and it

therefore puts forward reasons of its own to sustain them. These reasons are that the Benders were partners and because they were, the value of Eugene's gross estate and the deductions from it, are different from what they would have been but for the partnership relation. With deference then, rationalization of the Board's conclusions is as fallacious and unsound, does as complete violence to the terms of the statute as that the Board puts forward. I therefore respectfully dissent from the judgment of affirmance.

It does not follow however that I think that petitioners, though right in principle in insisting that gross rather than net estate values should be used, in determining the amount of the subsection (2) deduction, are right throughout. I think they are wrong in claiming as a deduction the $64,-090.41 federal estate taxes due and paid by Frank Bender's estate. It is not, it could not be claimed that Frank Bender could take these taxes as a deduction in his estate. It may not any more be claimed that Eugene may take them because they were unpaid at the time of Eugene's death. Federal taxes are not deductible and though they are obligations of Eugene Bender's estate by reason of his having taken under Frank Bender's will, all of his property subject to the payment of his debts,[7] they are not deductible obligations.

In arriving then at the true amount of the subsection (2) deduction, the figures to be used are the gross value of Frank Bender's estate as found by the Commissioner, to wit, $909,349.98, less payments made on account of that estate before Eugene's death, over the gross value of Eugene Bender's estate as also found by the Commissioner, to-wit, $2,414,929.07, and all of Eugene's deductions. These to include, not merely the approximately $203,000 of the partnership debts which was Eugene Bender's original share, but the $304,500 both Eugene and Frank Bender's share, and the other debts and charges against the estate of Frank Bender including therein, state inheritance taxes but excluding therefrom

---

[7] The will of Frank V. Bender contained the following provision:

"Second: I hereby devise and bequeath all of my property, real, personal and mixed wheresoever situated to my brother, Eugene L. Bender, in fee simple."

With respect to the passing of title to property upon the death of a testator, Article 8314 of the Revised Civil Statutes of Texas (1925) provides: "When

a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will shall vest immediately in the devisees or legatees; and all the estate of such person, not devised or bequeathed, shall vest immediately in his heirs at law; subject however, to the payment of the debts of the testator or intestate, except such as may be exempted by law; * * *."

federal estate taxes. I therefore think that the order of the Board should be reversed and the cause remanded for a redetermination of the deficiency in accordance with these views.